UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SIOBHAN FENTON, individually and on behalf of
all others similarly situated,

                      Plaintiffs,

       v.

 CRITERION WORLDWIDE and LEWIS
 MORTON,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.

**ORIGINAL COMPLAINT**

      Plaintiff SIOBHAN FENTON ("Plaintiff") on behalf of herself and all others similarly situated, by and through her attorneys, VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from Defendants CRITERION WORLDWIDE ("Criterion") and LEWIS MORTON ("Morton") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, for violation of the New York Labor Law ("NYLL"), and any other cause(s) of action that can be inferred from the facts set forth herein.

**INTRODUCTION**

    1.     This is a collective and class action brought by Plaintiff challenging acts committed by Defendants against Plaintiff and those similarly situated, which amounted to violations of federal and state wage and hour laws.

    2.     Defendants employed Plaintiff and all those similarly situated as Account Executives (collectively, the "Executives") on their marketing campaigns in New York City.

    3.     First, Plaintiff brings this action, pursuant to 29 U.S.C. § 216(b), on behalf of two (2) collectives of persons who are and were employed by Defendants as Account Executives during the past three (3) years through the final date of the disposition of this action who: (i)

are/were not paid the statutorily required overtime rate of one-and-a-half (1 ½) times their regular hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA; and (ii) are/were not paid the statutorily required federal minimum wage for all hours worked per workweek in violation of the FLSA and who are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime wages, (iii) unpaid minimum wages, (iv) liquidated damages, (v) interest, (vi) attorneys' fees and costs, and (vii) such other and further relief as this Court finds necessary and proper.

4.      Second, Plaintiff brings this action, pursuant to Fed R. Civ. P. 23, on behalf of three (3) classes of persons who are and were employed by Defendants as Account Executives during the past six (6) years through the final date of the disposition of this action who: (i) are/were not paid the statutorily required overtime rate of one-and-a-half (1 ½) times their regular hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the NYLL; (ii) are/were not paid the statutorily required minimum rate for all hours worked in a workweek in violation of the NYLL; and (iii) are/were not provided the proper wage statements and notices as required by NYLL § 195 (the Wage Theft Prevention Act, "WTPA") and who are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime wages, (iii) unpaid minimum wages (iv) liquidated damages, (v) penalties, (vi) interest, (vii) attorneys' fees and costs, and (viii) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this

Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 29 U.S.C. §§ 201 *et seq*.

6.      Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq*., in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain facilities, conduct business and reside in this district.

7.      The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

8.      At all relevant times, Plaintiff was an employee within the meaning of the FLSA and the NYLL and a resident of New York County, New York

9.      Upon information and belief, Defendant Criterion Worldwide ("Criterion") is an entity operating within the State of New York and within this judicial district.

10.     Upon information and belief, Defendant Criterion's principal place of business is located within in New York County, New York.

11.     Defendant Criterion transacted and continues to transact business in New York and within this judicial district by employing Plaintiff and those similarly situated as Account Executives.

12.     Defendant Criterion has at all relevant times been an "employer" covered by the FLSA and the NYLL, as that term is defined within each statute.

13.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Criterion exceeds $500,000.00 and thus subjects Defendant Criterion to the FLSA.

14.     Upon information and belief, Defendant Criterion is engaged in interstate commerce.  This independently subjects Defendant Criterion to the FLSA.

15.     Upon information and belief, Defendant Lewis Morton ("Morton") is a British citizen and resides in New York County, New York.

16.     Upon information and belief, Defendant Morton is the Owner, President, Shareholder, Officer, and/or Director of Defendant Criterion.

17.     Defendants jointly employed Plaintiff and those similarly situated by employing or acting in the interest of employer towards Plaintiff and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation, having the ability to hire them and by suffering Plaintiff and all those similarly situated employees to work.

## STATEMENT OF THE FACTS

### I.     Facts Common to All Executives

#### a.  General Facts

18.     Defendant Criterion is a marketing company headquartered in New York County, New York.

19.     Defendants employed the Executives as Account Executives within New York City.

20.     The Executives worked within New York City.

21.     Defendants employed the Executives on their marketing campaigns, throughout New York City.

22.     The Executives' primary job duties included standing on street corners and in front of frequented buildings, such as hospitals, to market the products and services of Defendants' clients, including, for example, to solicit low-income consumers to enroll into Assurance Wireless's government-subsidized cellphone plan pursuant to the "Lifeline Assistance Program."

23.     The Executives were compensated solely on a commission basis.

24.     The Executives were not paid on an hourly, fee, or salary basis.

25.     The Executives had the option of receiving payment via direct deposit or a check.

26.     The Executives who elected to receive direct deposit were not issued a paystub by Defendants.

27.     The Executives were compensated at a rate of $10.00 per person that they enrolled into Assurance Wireless's cellphone plan.

28.     The Executives typically enrolled between twenty (20) to thirty (30) persons per workweek.

29.     The Executives were required to work six (6) days per workweek.

30.     The Executives were required to work approximately eight (8) to twelve (12) hours per workday.

31.     The Executives did not have set schedules. Instead, the Executives' supervisors informed them whether they had to report to work the following day, and at what time and location.

32.     Defendants did not record the hours that the Executives worked.

33.     Defendants did not require Executives to record their own hours.

34.     The Executives began their workday by reporting to Defendants' headquarters for marketing "strategy" meetings.

35.    The Executives then went to their assigned location to solicit persons to purchase Defendants' clients' products and services, including, for example, by attempting to enroll people into Assurance Wireless cellphone plans.

36.    The Executives were not allowed to select their own locations to solicit persons to purchase Defendants' clients' products and services, including when attempting to enroll customers into the Assurance Wireless the cellphone plans.

37.    Each workday, the Executives' supervisors assigned them to a specific location where they were to solicit customers for the cellphone plans.

38.    The Executives were not permitted to deviate from their assigned location.

39.    If an Executive deviated from his assigned location he/she was subjected to discipline that could result in termination.

40.    The Executives were required to solicit persons to purchase Defendants' products and services at a fixed location.

41.    The Executives were dismissed from their location when their supervisor came to the location to relieve them.

42.    Once relieved, the Executives were required to return to Defendants' headquarters to submit their sales of products and services for the day to Defendant and to participate in a pseudo "pep-rally" for the Executives with the most sales for the day.

43.    Following the pseudo "pep-rally" some of the Executives were permitted to go home while others remained at the headquarters for another approximate hour to prepare for the following workday.

### b.  FLSA and NYLL Violations

44.      The Executives were paid approximately $200.00-$300.00 for approximately 48-72 worked hours per workweek—equating to an hourly rate of $2.70-$6.25 per hour, which is well below the federal and New York State minimum wages.

45.      Accordingly, the Executives were not paid the federal and New York State minimum wage for all hours worked per workweek.

46.      Furthermore, the Executives' worked in excess of forty (40) hours per workweek.

47.      The Executives were only compensated on a commission basis calculated upon the amount of products and services sold.

48.      The Executives were not compensated the statutorily required overtime rate of one-and-a-half (1 ½) their regular hourly rate for all hours worked in excess of forty (40) hours per workweek.

49.      The locations where the Executives solicited persons to purchase Defendants' clients' products and services were not retail or service establishments.

50.      The Executives are not exempt from the statutory provisions of the FLSA or the NYLL.

51.      Upon information and belief, Defendants did not issue the Executives a notice that included their rate of pay, how they were to be paid, their regular payday, Defendant Criterion's official name, main office address and phone number.

52.      Defendants did not provide the Executives with a wage statement each payday, which included the Executive's name, Defendant Criterion's name, address, and phone number, dates covered by the payment, and an explanation of how the wages were computed.

53.     Accordingly, Defendants did not provide the Executives with the proper notices and wage statements required by the WTPA.

**II.     Facts Specific to Plaintiff**

54.     In or around January 2017, Plaintiff began her employment for Defendants as an Account Executive.

55.     In or around March 2017, Plaintiff was assigned to the Assurance Wireless campaign.

56.     Plaintiff was compensated at a rate of $10.00 per person that she enrolled in Assurance Wireless's cellphone plan.

57.     During her tenure as an Account Executive on the Assurance Wireless campaign, Plaintiff worked approximately twelve (12) hours per workday and six (6) days per workweek.

58.     During her tenure as an Account Executive on the Assurance Wireless campaign, Plaintiff was only paid approximately $200.00-$300.00 per workweek.

59.     Accordingly, Defendants did not pay Plaintiff the federal and New York State minimum wage.

60.     During her tenure as an Account Executive on the Assurance Wireless campaign, Plaintiff was not paid the federal and New York State statutorily required overtime rate of one-and-a-half (1 ½) her hourly rate for all hours worked in excess of forty (40) hours per workweek.

61.     Defendants did not issue Plaintiff a notice that included her rate of pay, how she was to be paid, her regular payday, Defendant Criterion's official name, Defendant Criterion's main office address and phone number.

62.     Furthermore, Plaintiff was paid via direct deposit and was not provided on her payday with a paystub or wage statement that included her name, Defendant Criterion's name,

address, and phone number, dates covered by the payment, and an explanation of how the wages were computed.

63.     Defendants did not provide Plaintiff with the proper notices or wager statements required by the WTPA.

64.     In or around January 2018, Plaintiff resigned from her employment with Defendants because of their continual violations of the FLSA and the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

### I.     FLSA Overtime Collective

65.     Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on her own behalf as well as on behalf of those in a "collective" defined as follows:

> All Account Executives currently or formerly employed by Defendants during the past three (3) years through the final date of disposition of this action, who are/were required to work in excess of forty (40) hours per workweek without compensation at the federal statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

66.     At all relevant times, Plaintiff was similarly situated to all such individuals in the FLSA Overtime Collective[1] because, while employed by Defendants, Plaintiff and all FLSA Overtime Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, and were required to work in excess of forty (40) hours per workweek and were subject to Defendants' policies and practices of willfully failing to pay them at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

---

[1]     Hereinafter referred to as the FLSA Overtime Plaintiffs.

9

67.     Defendants are and have been aware of the requirement to pay Plaintiff and the FLSA Overtime Plaintiffs at a rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully choose not to.

68.     The FLSA Overtime Plaintiffs are readily discernable and ascertainable. All FLSA Overtime Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

69.     The number of FLSA Overtime Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

70.     All questions relating to Defendants' violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendants' failure to pay the statutorily required rate of one-and-one-half (1½) times the Executives' hourly rate for all hours worked in excess of forty (40) per workweek are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the collective.

71.     Plaintiff will fairly and adequately represent the interests of the collective and has no interests conflicting with the collective.

72.     A collective action is superior to all other methods and is necessary in order to fairly and completely resolve violations of the FLSA.

73.     Plaintiff's attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

74.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual FLSA Overtime Plaintiffs creates a risk

10

for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or participation.

75.     The questions of law and fact are nearly identical for all FLSA Overtime Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## II.     FLSA MINIMUM WAGE COLLECTIVE

76.     Plaintiff also seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on her own behalf as well as on behalf of those in a "collective" defined as follows:

> All Account Executives currently or formally employed by Defendants during the past three (3) years through the final date of disposition of this action, who are/were not paid the federal statutorily required minimum wage for all hours worked per workweek.

77.     At all relevant times, Plaintiff was similarly situated to all such individuals in the FLSA Minimum Wage Collective[2] because, while employed by Defendants, Plaintiff and all FLSA Minimum Wage Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, and were not paid the statutorily required federal minimum wage for all hours worked per workweek.

78.     Defendants are and have been aware of the requirement to pay Plaintiff and the FLSA Minimum Wage Plaintiffs the statutorily required federal minimum wage for all hours worked per workweek, yet willfully choose not to.

---

[2]     Hereinafter referred to as the FLSA Minimum Wage Plaintiffs.

79.     The FLSA Minimum Wage Plaintiffs are readily discernable and ascertainable. All FLSA Minimum Wage Plaintiffs' contact information is readily available in Defendants' records.   Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

80.     The number of FLSA Minimum Wage Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

81.     All questions relating to Defendants' violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendants' failure to pay the statutorily required minimum wage are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the collective.

82.     Plaintiff will fairly and adequately represent the interests of the collective and has no interests conflicting with the collective.

83.     A collective action is superior to all other methods and is necessary in order to fairly and completely resolve violations of the FLSA.

84.     Plaintiff's attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

85.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation.   Prosecution of separate actions by individual FLSA Minimum Wage Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or participation.

86.     The questions of law and fact are nearly identical for all FLSA Minimum Wage Plaintiffs and therefore proceeding as a collective action is ideal.   Without judicial resolution of

the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## FED. R. CIV. P. 23 CLASS ALLEGATIONS

### I.    NYLL OVERTIME CLASS

87.    Plaintiff seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL.

88.    The Class which Plaintiff seeks to define includes:

> All Account Executives currently or formerly employed by Defendants during the past six (6) years through the final date of disposition of this action, who are/were required to work in excess of forty (40) hours per workweek without compensation at the New York State statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

89.    The number of class members protected by the NYLL and who have suffered under Defendants' violation of the NYLL, as set forth herein, are too numerous to join in a single action, necessitating class recognition.

90.    All questions relating to the NYLL Overtime Class's allegations under the NYLL share a common factual basis with those raised by the claims of Plaintiff of working over forty (40) hours per workweek without compensation at the overtime rate of one-and-a-half (1 ½) their regular hourly rate for all hours worked in excess of forty (40) hours per workweek.

91.    None of the aforementioned claims are specific to Plaintiff or any proposed NYLL Overtime Class member(s) and the claims of Plaintiff are typical of those asserted by the proposed NYLL Overtime Class.

92.     Plaintiff will fairly and adequately represent the interests of all members of the proposed NYLL Overtime Class.

93.     A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated the NYLL by requiring all members of the proposed NYLL Overtime Class to work in excess of forty (40) hours per workweek without compensation at the overtime rate of one-and-a-half (1 ½) their regular hourly rate for all hours worked in excess of forty (40) hours per workweek.

94.     The class members of the proposed NYLL Overtime Class are readily discernable and ascertainable. Contact information for all members of the proposed NYLL Overtime Class[3] is readily available from Defendants since such information is likely to be contained in their personnel files.  Notice of this class action can be provided by any means permissible under the Fed. R. Civ. P. 23 requirements.

95.     Plaintiff asserts these claims on her own behalf as well as on behalf of the NYLL Overtime Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

96.     Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed NYLL Overtime Class and have no interests conflicting with those of the NYLL Overtime Class.

97.     The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual NYLL

---

[3]     Hereinafter referred to as the NYLL Overtime Plaintiffs.

Overtime Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

98.     Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendants. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the NYLL Overtime Class Plaintiffs' jobs and continued employment.

99.     The questions of law and fact that are nearly identical for all class members make proceeding as a class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed NYLL Overtime Class, continued violations of the NYLL will undoubtedly continue.

100.    Whether Plaintiff and the NYLL Overtime Class Plaintiffs were properly compensated with an overtime premium for all hours worked in excess of forty (40) hours per workweek is a common question, which can readily be resolved through the class action process.

## II.    NYLL MINIMUM WAGE CLASS

101.    Plaintiff also seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL.

102.    The Class which Plaintiff seeks to define includes:

> All Account Executives currently or formerly by Defendants during the past six (6) years through the final date of disposition of this action, who are/were not paid New York State's statutorily required minimum wage for all hours worked per workweek.

103.    The number of class members protected by the NYLL and who have suffered under Defendants' violation of the NYLL, as set forth herein, are too numerous to join in a single action, necessitating class recognition.

104.    All questions relating to the NYLL Minimum Wage Class's allegations under the NYLL share a common factual basis with those raised by the claims of Plaintiff of not being paid by Defendants New York State's statutorily required minimum wage for all hours worked per workweek.

105.    Plaintiff will fairly and adequately represent the interests of all members of the proposed NYLL Minimum Wage Class.

106.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the NYLL Minimum Wage Class's allegations that Defendants violated the NYLL by not compensating the proposed members of the NYLL Minimum Wage Class New York State's statutorily required minimum wage for all hours worked per workweek.

107.    The class members of the proposed NYLL Minimum Wage Class are readily discernable and ascertainable. Contact information for all members of the proposed NYLL Minimum Wage Class[4] is readily available from Defendants since such information is likely to be contained in their personnel files.  Notice of this class action can be provided by any means permissible under the Fed. R. Civ. P. 23 requirements.

108.    Plaintiff asserts these claims on her own behalf as well as on behalf of the NYLL Minimum Wage Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

---

[4]        Hereinafter referred to as the NYLL Minimum Wage Plaintiffs.

109.    Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed NYLL Minimum Wage Class and has no interests conflicting with those of the NYLL Minimum Wage Class.

110.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual NYLL Minimum Wage Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or participation.

111.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendants. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the NYLL Minimum Wage Class Plaintiffs' jobs and continued employment.

112.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed NYLL Minimum Wage Class, continued violations of the NYLL will undoubtedly continue.

113.    Whether Plaintiff and the NYLL Minimum Wage Class Plaintiffs were paid New York State's statutorily required minimum wage for all hours worked per workweek is a common question, which can readily be resolved through the class action process.

III.    **NYLL NOTICE CLASS**

114.    Plaintiff further seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL.

115.    The Class which Plaintiff seeks to define includes:

> All Account Executives currently or formerly employed by Defendants during the past six (6) years through the final date of disposition of this action, who are/were not provided the New York State statutorily required wage statements and notices pursuant to the WTPA.

116.    The number of class members protected by the NYLL and who have suffered under Defendants' violation of the NYLL, as set forth herein, are too numerous to join in a single action, necessitating class recognition.

117.    All questions relating to the NYLL Notice Class's allegations under the NYLL share a common factual basis with those raised by the claims of Plaintiff, of being denied the proper wage statements and notices pursuant to the WTPA. None of the aforementioned claims are specific to Plaintiff or any proposed NYLL Notice Class member(s) and the claims of Plaintiff are typical of those asserted by the proposed NYLL Notice Class.

118.    Plaintiff will fairly and adequately represent the interests of all members of the proposed NYLL Notice Class.

119.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated the NYLL by not providing all members of the proposed NYLL Notice Class with the proper statement and notices pursuant to the WTPA.

120.    The class members of the proposed NYLL Notice Class are readily discernable and ascertainable. Contact information for all members of the proposed NYLL Notice Class[5] is readily available from Defendants since such information is likely to be contained in their personnel files.  Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23.

121.    Plaintiff asserts these claims on her own behalf as well as on behalf of the NYLL Notice Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

122.    Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed NYLL Notice Class and has no interests conflicting with those of the NYLL Notice Class.

123.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual NYLL Notice Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or participation.

124.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendants. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the NYLL Notice Class Plaintiffs' jobs and continued employment.

---

[5]     Hereinafter referred to as the NYLL Notice Plaintiffs.

125.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed NYLL Notice Class, continued violations of the NYLL will undoubtedly continue.

126.    Whether Plaintiff and the NYLL Notice Class Plaintiffs were properly provided with statements and notices pursuant to the WTPA are common questions, which can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Plaintiff on Behalf of All FLSA Overtime Plaintiffs**

127.    Plaintiff and the FLSA Overtime Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

128.    Throughout the period covered by the applicable statute of limitations, Plaintiff and other FLSA Overtime Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

129.    Defendants knowingly failed to pay Plaintiff and the FLSA Overtime Plaintiffs the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

130.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

131.    Defendants' conduct was in violation of the Fair Labor Standards Act.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Plaintiff on Behalf of All**
**FLSA Minimum Wage Plaintiffs**

132.     Plaintiff and the FLSA Minimum Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

133.     Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiff and the FLSA Minimum Wage Plaintiffs the federal statutorily required minimum wage for all hours worked per workweek in violation of the FLSA.

134.     Plaintiff and the FLSA Minimum Wage Plaintiffs are entitled to payment at the statutory minimum wage for all hours worked.

135.     Defendants' conduct was willful and lasted for the duration of the relevant time period.

136.     Defendants' conduct was in violation of the Fair Labor Standards Act.


**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law Made by Plaintiff on Behalf of All NYLL Overtime Plaintiffs**

137.     Plaintiff and the NYLL Overtime Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

138.     Throughout the period covered by the applicable statute of limitations, Plaintiff and other NYLL Overtime Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

139.     Defendants knowingly failed to pay Plaintiff and the NYLL Overtime Plaintiffs the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

140.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

21

141.    Defendants' conduct was in violation of the New York Labor Law.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law Made by Plaintiff on Behalf of All NYLL Minimum Wage**
**Plaintiffs**

142.    Plaintiff and the NYLL Minimum Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

143.    Defendants knowingly failed to pay Plaintiff and the NYLL Minimum Wage Plaintiffs New York State's statutorily required minimum wage for all hours worked per workweek in violation of the NYLL.

144.    Plaintiff and the NYLL Minimum Wage Plaintiffs are entitled to payment at the statutory minimum wage for all hours worked.

145.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

146.    Defendants' conduct was in violation of the New York Labor Law.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law Made by Plaintiff on Behalf of All NYLL Notice Plaintiffs**

147.    Plaintiff and the NYLL Notice Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

148.    Defendants' knowingly failed to provide Plaintiff and the NYLL Notice Plaintiffs with all the required wage statements and notices pursuant to WTPA.

149.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

150.    Defendants' conduct was in violation of the New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and all collective and class members demand judgment against Defendants as follows:

A.      At the earliest possible time, Plaintiff should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported collectives and classes defined herein.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages and/or benefits;

B.      Designation of Plaintiff as representative of the FLSA Collectives and Rule 23 Classes defined herein, and Plaintiff's counsel as Collective and Class Counsel;

C.      Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

D.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed Class members under the NYLL;

E.      Demand a jury trial on these issues to determine liability and damages;

F.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

G.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; and the New York Labor Law.

H.      All damages which Plaintiff, all Collective Plaintiffs, and all Class Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, penalties, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

I.      An award to Plaintiff, all Collective Plaintiffs, and all Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

J.      An award to Plaintiff, all Collective Plaintiffs, and all Class Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

K.      An award to Plaintiff, all Collective Plaintiffs, and all Class Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

L.      Awarding Plaintiff, all Collective Plaintiffs, and all Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

M.      Pre-judgment and post-judgment interest, as provided by law; and

N.      Granting Plaintiff, all Collective Plaintiffs, and all Class Plaintiffs other and further relief as this Court finds necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated:  November 2, 2018
   Garden City, New York

        Respectfully submitted,

        /s/ *Matthew L. Berman*
        Matthew L. Berman, Esq.
        James Vagnini, Esq.
        Robert J. Valli, Jr., Esq.
        Sara Wyn Kane, Esq.
        **Valli Kane & Vagnini LLP**
        600 Old Country Road, Suite 519
        Garden City, New York 11530
        (516) 203-7180 (phone)
        (516) 706-0248 (fax)

        *Attorneys for Plaintiff*