Jordan E. Pace, Esq.
Bryn Goodman, Esq.
Fox Rothschild LLP
101 Park Avenue, Suite 1700
New York, New York 10178
Telephone: (212) 878-7900
Facsimile: (212) 692-0940
*Attorneys for Defendant Lewis Morton*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIOBHAN FENTON, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>– against –<br><br>CRITERION WORLDWIDE and LEWIS MORTON,<br><br>  Defendants. | ECF Case<br><br>1:18-cv-10224 (ER) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL
ARBITRATION ACT TO DISMISS PLAINTIFF'S COMPLAINT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS ..................................................................................................................... 2

I. RELEVANT PROCEDURAL HISTORY ......................................................................... 2

II. FACTS RELEVANT TO PLAINTIFF'S AGREEMENT TO ARBITRATE .................... 2

ARGUMENT .................................................................................................................................. 5

I. LEGAL STANDARD ON MOTION TO DISMISS CLAIMS SUBJECT TO AN
   ARBITRATION AGREEMENT AND TO COMPEL ARBITRATION THEREOF. ....... 5

II. PLAINTIFF'S CLAIMS MUST BE DISMISSED DUE TO HER AGREEMENT TO
    ARBITRATE OR IN THE ALTERNATIVE, SUBJECT TO A STAY PENDING
    THE OUTCOME OF COMPULSORY ARBITRATION. ................................................ 7

    A. Plaintiff Agreed To Arbitrate Her Claims. ............................................................. 7

    B. Plaintiff's Claims Fall Within The Scope Of The Agreements To Arbitrate. ........ 8

    C. The Arbitration Agreement Applies to Plaintiff's Claims Against Defendant. ..... 11

    D. Should the Court Decline to Dismiss All of Plaintiff's Claims, A Stay Should
       Be Granted Pending the Outcome of Arbitration. ................................................ 12

CONCLUSION ............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arrigo v. Blue Fish Commodities, Inc.*,
   704 F. Supp. 2d 299 (S.D.N.Y. 2010)......................................................................................6

*Barreto v. Jec II, LLC*,
   No. 16-CV-9729 (KBF), 2017 WL 3172827 (S.D.N.Y. July 25, 2017).................................11

*Buchman v. Weiss*,
   Nos. 08 Civ. 5453 (RJS), 08 Civ. 5456 (RJS), 2009 WL 2044615 (S.D.N.Y.
   July 15, 2009).........................................................................................................................6

*Bynum v. Maplebear Inc.*,
   160 F. Supp. 3d 527 (E.D.N.Y. 2016) ..................................................................................10

*Collins v. Aikman Prods. Co. v. Bldg. Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995)........................................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)................................................................................................................6

*In re Document Techs. Litig.*,
   No. 17-CV-2405, 2017 WL 4350597 (S.D.N.Y. June 27, 2017) ..........................................11

*Gillman* v. *Chase Manhattan Bank*,
   73 N.Y.2d 1 (1988) ............................................................................................................ 7-8

*Gold* v. *Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004)....................................................................................................7

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000)..................................................................................................................6

*JLM Indus. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)..................................................................................................11

*Kowaleski v. Samandrov*,
   590 F. Supp. 2d 477 (S.D.N.Y. 2008).....................................................................................6

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*,
   86 F. Supp. 3d 277 (S.D.N.Y. 2015).....................................................................................12

*LaVoice v. UBS Fin. Servs., Inc.*,
   No. 11 CV 2308 (BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)............................7

*McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*,
  858 F.2d 825 (2d Cir. 1988)..............................................................................................10

*Merrick v. UnitedHealth Grp. Inc.*,
  127 F. Supp. 3d 138 (S.D.N.Y. 2015)..................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................................................10

*Naldi v. Grunberg,*
  80 A.D.3d 1, 908 N.Y.S.2d 639 (1st Dep't 2010) ...............................................................8

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010)................................................................................................12

*Reyes v. Gracefully, Inc.*,
  No. 17-CV-9328 (VEC), 2018 WL 2209486 (S.D.N.Y. May 11, 2018)....................9, 10, 11

*Rodriguez-Depena v. Parts Auth., Inc.*,
  877 F.3d 122, 124 (2d Cir. 2017)..........................................................................................9

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
  263 F.3d 26 (2d Cir. 2001)....................................................................................................6

*Sutherland v. Ernst & Young, LLP*,
  726 F.3d 290 (2d Cir. 2013)................................................................................................10

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*,
  661 F.3d 164 (2d Cir. 2011)..................................................................................................6

**Statutes**

Federal Arbitraiton Act ("FAA")......................................................................2, 5, 6, 7, 9, 10, 12

Federal Rules of Civil Procedure ("Fed. R. Civ. Pro") ..................................................................1

Fair Labor Standards Act ("FLSA")..............................................................................1, 2, 9, 10

New York Labor Law ("NYLL") ..................................................................................1, 2, 9, 10

Defendant, Lewis Morton ("Defendant"),[1] by through his undersigned attorneys, respectfully submit this Memorandum of Law in support of Defendants' Motion to Dismiss the Complaint (Docket No. 1), or, in the alternative, to Stay Plaintiff's Claims Pending Arbitration ("Defendants' Motion") pursuant to §§ 2, 3, and 4 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").

## PRELIMINARY STATEMENT

Plaintiff Siobhan Fenton (hereinafter "Plaintiff" or "Fenton") was employed by Global Outsourcing, Inc. ("Global"), an entity that is not a party to this lawsuit, as an outside sales representative from October 16, 2017 to January 2018.[2] On or around October 16, 2017, Plaintiff was interviewed by Defendant Morton, the CEO of Global, and she was hired.[3] Upon her hire, signed an arbitration agreement agreeing to arbitrate all claims arising from her employment, including the claims alleged in her Complaint.[4] On November 29, 2017, Plaintiff signed another arbitration agreement, again agreeing to arbitrate claims arising from her employment.[5] The language of both agreements clearly encompasses Plaintiff's claims in her Complaint for failure to pay proper wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law

---

[1] Defendant's counsel waived service for Plaintiff's employer, Global, who was incorrectly sued herein as "Criterion Worldwide." Plaintiff filed the waiver of service (Docket No. 10). At the pre-motion conference, Plaintiff's counsel contended that Criterion Worldwide--not Global--was Plaintiff's employer and was properly named. Plaintiff's counsel further represented that it is not bringing any claims against Global and is proceeding only against Criterion Worldwide and Morton. Criterion Worldwide is not a legal entity and was not and could not have been Plaintiff's employer. Moreover, if Plaintiff insists that Criterion Worldwide is the proper defendant, Criterion Worldwide was not served within the statutory timeframe permitted (deadline was February 13, 2019), as such, Plaintiff's claims against Criterion Worldwide must be dismissed. *See* Fed. R. Civ. Pro. 4(m).

[2] *See* Declaration of Lewis Morton in Support of Defendant's Motion to Compel Arbitration dated May 9, 2019 ("Morton Decl.") ¶¶ 5,12.

[3] Morton Decl. ¶ 5.

[4] The arbitration agreement executed by Plaintiff on October 16, 2017, is attached to the Morton Decl. as Exhibit ("Ex.") "1," (hereinafter the "First Arbitration Agreement").

[5] The arbitration agreement executed by Plaintiff on November 29, 2017, is attached to the Morton Decl. as Ex. "3," (the "Second Arbitration Agreement").

("NYLL"). Furthermore, in both agreements Plaintiff agreed to arbitrate her employment claims with non-signatories to the agreement.

Accordingly, consistent with the terms of both the First Arbitration Agreement and Second Arbitration Agreement—or either independently— Plaintiff's claims should be dismissed, in their entirety, and arbitration compelled under §§ 2, 3, and 4 of the FAA. In the alternative, should the Court decline to dismiss Plaintiff's claims, Defendant requests that this action be stayed pursuant to FAA § 3 pending the outcome of compulsory arbitration.

## RELEVANT FACTS[6]

### I.     Relevant Procedural History.

On or about November 2, 2018, Plaintiff filed the instant action alleging that Defendant and Criterion Worldwide failed to properly pay her minimum wages in violation of the FLSA and NYLL, and failed to furnish her with the proper rate of pay notice and wage statements under the NYLL. (*See* Compl., ¶¶ 127-150.)

### II.    Facts Relevant To Plaintiff's Agreement To Arbitrate.

Global Outsourcing, Inc. ("Global") is an Independent Sales Office ("ISO") that provides sales and marketing services for vendors implementing certain sales campaigns.[7] Morton is the President of Global.[8] (*See* Compl. ¶ 16.) On or around October 16, 2017, Morton hired Plaintiff to work for Global as a sales representative.[9] One of Global's sales campaigns was the Assurance Wireless campaign, which arises from federal government subsidizing provisions of cell phones

---

[6] Unless otherwise indicated, the facts recited herein are taken from Plaintiff's Complaint. Defendant does not admit to these allegations and reserves the right to challenge the veracity of such allegations.

[7] Morton Decl. ¶ 4.

[8] Morton is not an owner of Global, he is merely an officer. *See* Morton Decl. ¶¶ 2, 3.

[9] Morton Decl. ¶ 5.

to low-income subscribers through a program called "Lifeline Assistance."[10] Telecommunications companies that participate in the Lifeline Assistance program engage ISOs like Global to conduct their sales campaigns.[11] Plaintiff was slotted to work on the Assurance Wireless campaign. (*See* Compl. ¶ 22.) Plaintiff alleges that both Morton and Criterion Worldwide employed her to stand on "street corners and in front of frequented buildings, such as hospitals, . . . to solicit low-income consumers to enroll into Assurance Wireless government-subsidized cell phone plan" from January 2017 until January 2019.[12] (*See* Compl. ¶¶ 17, 22.) When Plaintiff was hired, on or around October 16, 2017, Plaintiff signed the First Arbitration Agreement, which contains the following provision:

> Employer and Employee agree that all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of Employee's application or candidacy for employment, employment, or termination of employment with the Employer, and which may have occurred prior to or after entering into this arbitration agreement . . . shall be submitted to binding arbitration. Employer and Employee agree that the requirement to arbitrate shall also apply to any claim that may arise out of or relate to Employee's employment and which Employee may assert against Employer's employees, officers, directors, agents, suppliers or service providers, whether an individual or entity. Employer and Employee consent to the joinder and participation in the arbitration proceeds of parties, who are not parties or signatories to this Policy, including but not limited to Employer's employees, officers, directors, agents, suppliers, service providers, or any other essential party relevant to a full and complete settlement of any dispute arising out of Employee's . . . employment . . . which may have occurred prior to or after entering into this arbitration agreement and arbitrated under this Policy. . . . **BY ACCEPTING EMPLOYMENT WITH EMPLOYER, OR CONTINUING TO REMAIN EMPLOYED BY COMPANY, EMPLOYEE AND EMPLOYER ARE EACH GIVING UP HIS/HER/ITS RIGHT TO A JURY TRIAL AND HIS/HER/ITS RIGHT TO PARTICIPATE IN A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION BECAUSE ALL CLAIMS WILL BE RESOLVED EXCLUSIVELY THROUGH ARBITRATION. . . . BY**

---

[10] Morton Decl. ¶ 7.

[11] Morton Decl. ¶ 7.

[12] Global's records reflect that she worked from October 2017 to January 2018. *See* Morton Declaration ¶¶ 5,12.

> **ACCEPTING EMPLOYMENT WITH EMPLOYER, OR CONTINUING TO REMAIN EMPLOYED BY COMPANY, YOU ARE ACKNOWLEDGING THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO BE BOUND BY THE TERMS OF THIS MUTUAL ARBITRATION OF ALL CLAIMS POLICY. . . .**

(Morton Decl. Ex. "1" (emphasis in original).)

On November 29, 2017, Global sent Plaintiff several agreements via email, including a Mutual Agreement to Arbitrate Employment-Related Disputes (the "Second Arbitration Agreement").[13] Plaintiff electronically signed the Second Arbitration Agreement the same day.[14] The Second Arbitration Agreement provides, in pertinent part, that Employee and Global (defined as "Employer" or "Company") agree to arbitrate, as follows:

> "any claim, complaint, or dispute that arises out of or relates in any way to the Parties' employment relationship including but not limited to Employee's . . . employment . . . whether based in contract, tort, federal, state, or municipal statute, fraud, misrepresentation, or any other legal theory, shall be submitted to binding arbitration to be held in the county and state of the nearest office of the American Arbitration Association ("AAA") where Employee worked for Employer . . .The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement and the arbitrability of dispute between the parties.
>
> . . .
>
> 2. <u>Covered Claims</u>
>
> This Agreement to arbitrate covers all grievances, disputes, claims, or causes of action (collectively, "**claims**") that otherwise could be brought in a federal, state, or local court or agency under applicable federal, state, or local laws, arising out of or relating to Employee's . . . employment with the Employer . . . including claims Employee may have against the Employer or against its officers, directors, supervisors, managers, employees, or agents in their capacity as such or otherwise, or that the Employer may have against Employee. Employer and Employee consent to the joinder and participation in the arbitration proceeding of parties, who are not parties or signatories to this Arbitration Agreement, including but

---

[13] Morton Decl., Ex. "2."

[14] Morton Decl., Ex. "3."

> not limited to Company's suppliers, services providers, clients, or any other essential party relevant to a full and complete settlement of any dispute arising out of or relating to Employee's . . . employment . . .and which may have occurred prior to or after entering into this arbitration agreement and arbitrated under this Arbitration Agreement.
>
> The claims covered by this Agreement include, but are not limited to, claims for breach of any contract or covenant (express or implied), tort claims, claims for wages or other compensation due, . . . claims for violation of any federal, state, local, or other governmental law, statute, regulation, or ordinance, including, but not limited to, all claims arising under . . . Fair Labor Standards Act . . . all of their respective implementing regulations and any other federal, state, local, or foreign law (statutory, regulatory, or otherwise).
>
> . . .
>
> 4. <u>Waiver of Class Action and Representative Action Claims</u>. Except as otherwise required under applicable law, Employee and Employer expressly intend and agree that: (a) class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Agreement; (b) each will not assert class action or representative action claims against the other in arbitration or otherwise; and (c) to the extent not otherwise permitted in this Arbitration Agreement, Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. Further, Employee and Employer expressly intend and agree that any claims by the Employee will not be joined, consolidated, or heard together with claims of any other employee. . . . "

(Morton Decl. Ex. "3" (emphasis in original).)

Despite agreeing to arbitrate any disputes arising from her employment, Plaintiff has not attempted to resolve her disputes by arbitration.

## **ARGUMENT**

**I. Legal Standard on Motion to Dismiss Claims Subject to an Arbitration Agreement and to Compel Arbitration Thereof.**

Under section 4 of the FAA, a party to an arbitration agreement may petition a court for an order that arbitration proceed in the manner provided for in such agreement. *See* 9 U.S.C. § 4. The FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds,*

5

*Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted).

Federal courts have long recognized a strong federal presumption of arbitration as an alternative means of dispute resolution.  *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 29 (2d Cir. 2001).  The FAA provides for a stay of the proceedings pending arbitration; however, courts have discretion to dismiss, rather than stay an action where, as here, all of the claims must be submitted to arbitration.  *See* 9 U.S.C. § 3; *Kowaleski v. Samandrov*, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (citations omitted).  If the question of whether a dispute is arbitrable can be decided as a matter of law based on the undisputed facts in the record, then the court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'"  *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal citations omitted).  Plaintiff's claims should be dismissed under the FAA because <u>all</u> of her claims are subject to binding arbitration.  *See Buchman v. Weiss*, Nos. 08 Civ. 5453 (RJS), 08 Civ. 5456 (RJS), 2009 WL 2044615, at *1 (S.D.N.Y. July 15, 2009) (granting motion to dismiss and compel arbitration).

In the Second Circuit, to determine whether to compel arbitration, the court must resolve three issues: (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable.  *See Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 302 (S.D.N.Y. 2010) *aff'd*, 408 F. App'x 480 (2d Cir. 2011).  "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further proceedings and order the parties to arbitrate."  *LaVoice v. UBS Fin. Servs., Inc.*,

6

No. 11 CV 2308 (BSJ) (JLC), 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (quoting *Nunez v. Citibank, N.A.*, No. 08 CV 5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Merrick v. UnitedHealth Grp. Inc.*, 127 F. Supp. 3d 138, 146 (S.D.N.Y. 2015) (quoting *Atlantica Holdings, Inc. v. BTA Bank JSC,* No. 13 CV 5790(JMF), 2015 WL 144165, at *6 (S.D.N.Y. Jan. 12, 2015)).

**II.     Plaintiff's Claims Must Be Dismissed Due to Her Agreement to Arbitrate or in the Alternative, Subject to a Stay Pending the Outcome of Compulsory Arbitration.**

Plaintiff agreed to resolve, *inter alia*, her wage and hour claims asserted herein through the arbitration process set forth in the First Arbitration Agreement or the Second Arbitration Agreement. Further, Plaintiff's claims against Defendant Morton are arbitrable. As a result, Plaintiff must be compelled to submit all of her claims to arbitration and the present action should be dismissed. In the alternative, if the Court disagrees that the Plaintiff's claims should be dismissed, Plaintiff must be compelled to arbitrate her claims, and all such claims stayed in this Court pending the outcome of such arbitration.

**A.     Plaintiff Agreed To Arbitrate Her Claims.**

As to the threshold question, *i.e.* whether there was an agreement to arbitrate between the parties, courts apply general principles of contract. By signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement. *See, e.g.*, *Gold* v. *Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004); *Gillman* v. *Chase Manhattan Bank*, 73 N.Y.2d 1, 11 (1988) (holding that a party's signature generally creates a presumption that the party assented to the terms of the agreement).

7

Plaintiff signed both the First Arbitration Agreement and Second Arbitration Agreement. Plaintiff voluntarily signed the First Arbitration Agreement by hand when she was hired by Global.[15]  It cannot be disputed that Plaintiff signed a straightforward arbitration agreement which clearly and unequivocally requires that any disputes arising out of her employment with her employer be submitted to arbitration.  Plaintiff alleges she was employed by Defendant at the time the First Arbitration Agreement was signed. (*See* Compl. ¶ 54).  As such, Plaintiff agreed to arbitrate her employment related claims against Defendant.  Plaintiff cannot proffer any evidence that would invalidate the arbitration agreement.

Plaintiff electronically signed the Second Arbitration Agreement about a month after her initial hire date.[16]  The New York Electronic Signatures and Records Act provides that an electronic signature "shall have the same validity and effect as the use of a signature affixed by hand."  N.Y. State Technology Law § 304[2]; *e.g. Naldi v. Grunberg,* 80 A.D.3d 1, 10–11, 908 N.Y.S.2d 639 (1st Dep't 2010).  The Second Arbitration Agreement also requires that any disputes arising out of Plaintiff's employment with her employer be submitted to arbitration.  As such, Plaintiff also agreed to arbitrate the claims asserted in the Complaint under the Second Arbitration Agreement.

### B. Plaintiff's Claims Fall Within The Scope Of The Agreements To Arbitrate.

There is no question that Plaintiff's claims are covered by the First Arbitration Agreement and Second Arbitration Agreement. The broad agreement to arbitrate "all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of Employee's" employment

---

[15] *See* Morton Decl. Ex., "1."

[16] *See* Morton Decl. Ex., "3."

with Global in the First Arbitration Agreement is clear and unequivocal.  Thus, this Court should compel arbitration because it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins v. Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).  Plaintiff has waived her rights to bring any employment claims against Global its employees, officers, directors, agents, suppliers or service providers, whether an individual or entity, in court and/or before a jury.  Morton is an officer of Global.[17]  Thus, Plaintiff cannot proceed with this action, and she is instead obligated to submit her claims against Morton and any related defendants to binding arbitration.

Here, Plaintiff also signed a Second Arbitration Agreement, which covers all "claims for wages or other compensation due. . . arising under . . . Fair Labor Standards Act . . . all of their respective implementing regulations and any other federal, state, local, or foreign law (statutory, regulatory, or otherwise)."  The broad arbitration provision agreed to by Plaintiff covers all of the claims in her Complaint.  Broad arbitration clauses of this nature are routinely found to compel the arbitration of FLSA and NYLL claims.  *Reyes v. Gracefully, Inc.*, No. 17-CV-9328 (VEC), 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018) (noting that "[t]he Second Circuit has held that nothing in the FLSA evinces an intent from Congress to exempt claims brought under it from the broad policies of the FAA.") citing *Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 2634 (2018); *see also Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 540 (E.D.N.Y. 2016) ("The decisions of the Supreme Court, as well as of courts both within and outside this circuit, indicate that valid arbitration agreements subjecting individual FLSA claims to arbitration must be enforced in accordance with the FAA.").  "The Second Circuit

---

[17] Morton Decl. ¶ 2.

has also held that the fact that FLSA claims are arbitrable means that NYLL claims brought with an FLSA claim are also arbitrable." *Reyes v. Gracefully, Inc.*, No. 17-CV-9328 (VEC), 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018) *citing Sutherland v. Ernst & Young, LLP*, 726 F.3d 290 at 292 n.1 (2d Cir. 2013) ("[I]n light of our conclusion that [the plaintiff's] FLSA claim must proceed individually in arbitration pursuant to the Federal Arbitration Act, so too must her NYLL claim." (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011)).

In *Reyes*, the court noted that "[w]here an arbitration clause is broad, there is a presumption of arbitrability that may only be overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute.'" *Id.* (quoting *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 118 (2d Cir. 2011). The Second Circuit has noted that an arbitration clause is "broad" when the "parties agree to submit to arbitration disputes of any nature or character, or simply any and all disputes." *McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (internal quotation marks and citation omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 34-35 (1983).

In this case, Plaintiff asserts claims under the FLSA and NYLL that she was denied wages and that Defendants failed to furnish Plaintiff with a rate of pay notice and wage statements under the NYLL. The First and Second Arbitration Agreements require Plaintiff to arbitrate all dispute or claims arising from the parties' employment relationship.[18] Accordingly, as in *Reyes*, Plaintiff's

---

[18] *See* Morton Decl. Exs. "1" and "3."

10

claims are subject to the arbitration provision that she executed and should be compelled to arbitrate her claims.

> C. **The Arbitration Agreement Applies to Plaintiff's Claims Against Defendant.**

Plaintiff's claims against Morton, a non-signatory to the First Arbitration Agreement, are arbitrable. In cases where the claims alleged against a party to the arbitration agreement are inextricably intertwined with claims alleged a non-signatory, the non-signatory may compel arbitration. *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004). Decisions in this District have distilled the requirements for a non-signatory to compel arbitration "into a two-part 'intertwined-ness' test [which examines whether]: (1) the signatory's claims arise under the 'subject matter' of the underlying agreement, and (2) whether there is a 'close relationship' between the signatory and the non-signatory party." *In re Document Techs. Litig.*, No. 17-CV-2405, 2017 WL 4350597, at *3 (S.D.N.Y. June 27, 2017) (quoting *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013)).

As to the first prong, Plaintiff alleges she was employed by both defendants. Moreover, the claims against Morton are identical to her claims against Criterion Worldwide. *See Barreto v. Jec II, LLC*, No. 16-CV-9729 (KBF), 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017) (finding where the arbitration agreement covered all employment claims and plaintiffs raised the same claims against all defendants, all claims were arbitrable). As such, Plaintiff's claims against Defendant trigger the Plaintiff's agreement to arbitrate under the First Arbitration Agreement and Second Arbitration Agreement.

As to the second prong, a close relationship exists between the signatories to the Arbitration Agreement. Plaintiff and Criterion Worldwide, and non-signatory party, Morton, are allegedly part of the same employment relationship. Based on the allegations in the Complaint, it appears

11

that Plaintiff believes defendants were co-employers. (*See* Compl. ¶ 21.)  These facts create the kind of close relationship that requires that the claims against Morton be arbitrated.  *See, e.g. Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (holding that where plaintiff believed ESPN was her co-employer and made identical allegations against a signatory, even though ESPN was not a party to the arbitration agreement, the application of equitable estoppel justified sending the entire dispute to arbitration).  Therefore, this Court should compel arbitration of all Plaintiff's claims.

> **D.** **Should the Court Decline to Dismiss All of Plaintiff's Claims, A Stay Should Be Granted Pending the Outcome of Arbitration.**

While Defendants contend that Plaintiff's claims should all be dismissed since <u>all</u> claims asserted by them are subject to compulsory arbitration, should the Court disagree, then arbitration must be compelled and Plaintiff's claims *stayed* pending the outcome of arbitration.  "If any suit or proceeding . . . is referable to arbitration . . . [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 288 (S.D.N.Y. 2015).  Because Plaintiff's claims are all clearly referable to arbitration under the First and Second Arbitration Agreements, this matter must be stayed pending the outcome of arbitration.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order (i) dismissing this action and compelling Plaintiff to proceed with arbitration pursuant to the terms of her First Arbitration Agreement, or, pursuant to the terms of her Second Arbitration Agreement, or, *in the alternative*, (ii) staying this action pending the outcome of compulsory arbitration pursuant to the terms of the applicable arbitration agreement, and (iii) awarding Defendant the costs

incurred in submitting the instant motion, and such other and further relief the Court deems just and proper.

Dated: New York, New York　　　FOX ROTHSCHILD LLP
　　　　May 9, 2019

　　　　　　　　　　　　　　　　By: ___/s/ Bryn Goodman___
　　　　　　　　　　　　　　　　　　Jordan E. Pace
　　　　　　　　　　　　　　　　　　Bryn Goodman
　　　　　　　　　　　　　　　　101 Park Avenue, 17th Floor
　　　　　　　　　　　　　　　　New York, New York 10178
　　　　　　　　　　　　　　　　(212) 878-7900

　　　　　　　　　　　　　　　　*Attorneys for Defendant Lewis Morton*