UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIOBHAN FENTON, *individually and on behalf of all others similarly situated*,

                        Plaintiffs,

–against–

CRITERION WORLDWIDE and LEWIS MORTON,

                        Defendants.

**OPINION AND ORDER**

18 Civ. 10224 (ER)

Ramos, D.J.:

Siobhan Fenton ("Fenton"), brings this action against Criterion Worldwide ("Criterion") and Lewis Morton ("Morton"), for violations of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). Morton moves to compel arbitration and dismiss or, alternatively, stay this action pursuant the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. For the reasons set forth below, Morton's motion to compel arbitration is GRANTED, his request to dismiss this action is DENIED, and this action is STAYED pending arbitration.[1]

**I.    BACKGROUND**

On November 2, 2018, Fenton filed the instant action alleging that Morton and Criterion failed to properly pay her minimum wages in violation of the FLSA and NYLL, and failed to furnish her with the proper rate of pay notice and wage statements under the NYLL. *See generally* Doc. 1 ("Compl."). Morton was served on January 16, 2019. Doc. 6. On February 19,

---

[1] Morton also includes, in the instant motion, a request for attorney's fees and costs incurred in bringing this motion. However, there is no briefing in support of this request. The Supreme Court has held that the "bedrock principle" in considering the award of attorney's fees, known as the "'American Rule,'" is that "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010) (internal citations omitted). Therefore, that request is denied.

2019, Fenton filed a waiver of service that had been executed by Defendants.[2]  Doc. 10.  On May 9, 2019, Morton moved to compel arbitration.  Doc. 21.

### A. Relevant Facts

According to Fenton, she was interviewed and hired on October 16, 2017 by Criterion and Morton.  *See* Doc. 24 Ex. 1 ("Fenton Decl.") ¶ 5.  According to Morton, he interviewed and hired Fenton that day to work for Global Outsourcing, Inc. ("Global"), a nonparty company that provides sales and marketing services.[3]  *See* Doc. 25 Ex. 1 ("Morton Decl.") at 1.  Fenton claims that at all relevant times, she was completely unfamiliar with Global, and that she understood that she was an employee of Criterion, whose president and chief executive officer was Morton. *See* Doc. 24, Ex. 1 ¶ 14.

At the time of her hiring, Fenton was presented with a document titled "Mutual Arbitration of All Claims Policy" (the "First Arbitration Agreement") and signed it.  *See* Doc. 24, Ex. 2 at 1-4; *see also* Fenton Decl. ¶ 13.  However, she declared that "she had no idea which employer offered the agreement to her" when she signed it.  *Id*. ¶ 13.

On November 29, 2017, weeks after she began her employment, Fenton was allegedly told by her supervisor that she was going to wear an identification badge showing that she was a Criterion employee.  Fenton Decl. ¶ 14.  According to Fenton, her supervisor told her that she would receive a call from Morton later about the badge.  *Id*.  Later that day, Morton called Fenton, telling her to sign an authorization form digitally on her phone and send it back immediately, which would allow Criterion to use her photograph on her identification badge.  *Id*.

---

[2] However, Defendants handwrote "Global Outsourcing Inc. incorrectly sued as Criterion Worldwide" in the space for party waiving service of summons in the waiver.  Doc. 10.   Doc. 10.

[3] According to Morton, Criterion is one of the sales campaigns at Global.  *See* Doc. 24, Ex. 2.

According to Fenton, she did receive a document on her phone and signed it despite being unable to read it due to her phone's "small screen." *Id*. That document turned out to be an arbitration agreement (the "Second Arbitration Agreement"). According to Morton, Global sent Fenton four documents via email on November 29, 2017, including the Second Arbitration Agreement,[4] Doc. 24 Ex. 2 at 5-7, all of which Fenton signed electronically.

### B. The Arbitration Agreements

There are two arbitration agreements at issue in this case. The First Arbitration Agreement, which Fenton signed, contains the following provision:

> Employer and Employee agree that all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of Employee's application or candidacy for employment, employment, or termination of employment with the Employer, and which may have occurred prior to or after entering into this arbitration agreement…shall be submitted to binding arbitration. Employer and Employee agree that the requirement to arbitrate shall also apply to any claim that may arise out of or relate to Employee's employment and which Employee may assert against Employer's employees, officers, directors, agents, suppliers or service providers, whether an individual or entity…by accepting employment with employer, or continuing to remain employed by company, employee and employer are each giving up his/her/its right to a jury trial and his/her/its right to participate in a class, collective, or representative action because all claims will be resolved exclusively through arbitration...by accepting employment with employer, or continuing to remain employed by company, you are acknowledging that you have read, understood, and agree to be bound by the terms of this mutual arbitration of all claims policy…

The First Arbitration Agreement does not bear Morton's signature, nor does it define "Employer" or "Employee." *See* Doc. 24, Ex. 2 at 4.

---

[4] According to Morton, Global emailed Fenton the documents via a platform named "Meridian" on November 29, 2017. Morton Decl. ¶ 10. A screenshot of a Meridian record that day showed that a total of four documents, including "Harassment Discrimination Retaliation," "Commission Schedule," "Assurance Wireless SOP," and "Mutual Arbitration Agreement," were emailed to Fenton at approximately 8:28 am on November 29, 2017. Doc. 25 Ex. 2. The record further shows that each document was viewed at 8:43 am, and the bundle was signed electronically at 8:46 am.. *Id*.

The Second Arbitration Agreement, which Fenton signed electronically, provides in pertinent part:

> any claim, complaint, or dispute that arises out of or relates in any way to the Parties' employment relationship including but not limited to Employee's…employment… whether based in contract, tort, federal, state, or municipal statute, fraud, misrepresentation, or any other legal theory, shall be submitted to binding arbitration to be held in the county and state of the nearest office of the American Arbitration Association ("AAA") where Employee worked for Employer…The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement and the arbitrability of dispute between the parties…
>
> This [a]greement to arbitrate covers all grievances, disputes, claims, or causes of action…that otherwise could be brought in a federal, state, or local court or agency under applicable federal, state, or local laws, arising out of or relating to Employee's…employment with the Employer…including claims Employee may have against the Employer or against its officers, directors, supervisors, managers, employees, or agents in their capacity as such or otherwise, or that the Employer may have against Employee. The claims covered by this [a]greement include, but are not limited to, claims for breach of any contract or covenant (express or implied), tort claims, claims for wages or other compensation due…claims for violation of any federal, state, local, or other governmental law, statute, regulation, or ordinance, including, but not limited to, all claims arising under…Fair Labor Standards Act…all of their respective implementing regulations and any other federal, state, local, or foreign law (statutory, regulatory, or otherwise).
>
> By executing this [a]greement, the [p]arties represent that they have been given the opportunity to fully review and comprehend the terms of this Agreement. The [p]arties understand the terms of this [a]greeemnt and freely and voluntarily sign this [a]greement…

This agreement was also signed electronically by Morton. *See* Doc. 24, Ex. 2 at 5-7.

## II. LEGAL STANDARD

### A. Federal Arbitration Act

Section 4 of the FAA requires courts to compel arbitration in accordance with the terms of an arbitration agreement upon the motion of either party to the agreement, provided that there

is no issue regarding its creation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 354–355 (2011) (citing 9 U.S.C. § 4). Whether the parties agreed to arbitrate is generally a question decided by the court unless the parties "clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Determinations of arbitrability may be delegated to an arbitrator "if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)) (internal quotation marks omitted). In the absence of clear and unmistakable evidence that the parties intended to submit the question of arbitrability to the arbitrator, courts assume they, not arbitrators, were intended to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). To determine whether to compel arbitration, the Court must weigh four primary considerations: "(1) whether the parties in fact agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if the parties assert federal statutory claims, whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342 (S.D.N.Y. 2014) (citing *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)), *aff'd*, 633 Fed. Appx. 544 (2d Cir. 2015). "A party resisting arbitration on grounds that the arbitration agreement is invalid under a defense to contract formation, or that the arbitration contract does not encompass the claims at issue, bears the burden of proving such a defense." *Kulig v.*

*Midland Funding, LLC*, 13 Civ. 4715 (PKC), 2013 WL 6017444, at *2 (S.D.N.Y. Nov. 13, 2013).

Moreover, "federal policy strongly favors arbitration as an alternative dispute resolution process," thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "[f]ederal policy requires [courts] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal citations and quotations omitted); *see also, e.g., Champion Auto Sales, LLC v. Polaris Sales Inc.*, 943 F. Supp. 2d 346, 351 (E.D.N.Y. 2013) ("In keeping with this policy, the Court resolves doubts in favor of arbitration and enforces privately-negotiated arbitration agreements in accordance with their terms."). "[U]nless it may be said with positive assurance" that the arbitration clause does not cover the disputed issue, the court must compel arbitration. *Collins & Aikman Prods.*, 58 F.3d at 19 (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991)).

Despite the federal policy favoring arbitration, courts only apply the "presumption of arbitrability" if an "enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 288 (2010); *see also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 97 (2d Cir. 2014). "[D]oubts concerning the scope of an arbitration clause should be resolved in favor of arbitration," however, this "presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) (quoting *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)). "It is the court's duty to interpret and construe an arbitration provision, but only where a contract is 'validly formed' and 'legally enforceable.'" *Kulig*, 2013 WL 6017444, at *2 (S.D.N.Y. Nov. 13,

2013) (citing *Granite Rock Co.*, 561 U.S. at 303).

In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial, which is a similar standard to that applicable for a motion for summary judgment. *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA] . . . , the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (internal citations omitted). On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and draws all reasonable inferences in favor of the non-moving party. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted).

**B. Summary Judgment**

In ruling on motions to compel arbitration brought under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing

law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)). Summary Judgment may be properly granted where the nonmoving party "relied almost entirely on her own testimony," and that her testimony is contradicted by documentary evidence in the record. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105 (2d Cir. 2011).

### III. DISCUSSION

At the outset, the record indicates that Criterion had not been served properly and the time to serve Criterion, pursuant to Fed. R. Civ. P. 4(m), has expired. In fact, Fenton concedes the fact that Criterion is not an appropriate party. *See* Mem. of Law in Opp'n. to Mot. to Compel

8

Arbitration ("Fenton Mem."), Doc. 24 at 3 n.1 ("Criterion Worldwide was never formally incorporated by its proprietor [Morton], and thus it is a non-entity and non-party to this suit"); *see also id*. at 4. Therefore, Fenton's claims against Criterion Worldwide must be dismissed, leaving only her claims against Morton. *See id*. at 7 ("all of plaintiff's allegations are against Defendant [Morton], in his capacity as the sole proprietor of Criterion").[5]

Here, Morton contends that Fenton agreed to resolve the wage and hour claims asserted in this action through arbitration pursuant to both the First and Second Arbitration Agreements. The Court agrees.

### A. Agreement to Arbitrate

***The First Arbitration Agreement***

The United States Supreme Court has held that arbitration is a matter of "consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal quotation marks omitted). When deciding whether the parties consented to arbitration of a matter, courts generally look to ordinary state-law contract principles. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties in this case agree that New York law applies. "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound. *See Register.com,Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (applying New York law).

Here, Fenton's purported lack of knowledge of as to who offered her the First Arbitration Agreement cannot overcome the presumption that by signing the agreement, she demonstrated her knowledge of its contents, and her assent to enter into a binding arbitration agreement. Under New York law, a person "who signs or accepts a written contract is conclusively

---

[5] Under New York law, an individual who does business as a sole proprietor under one of several names remains one person, personally liable for all his obligations.

9

presumed to know its contents and assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). It is undisputed that Fenton signed the First Arbitration Agreement when she was hired. In addition, Fenton claimed that she was employed by Criterion and Morton, and Morton acknowledges that he hired her. To the extent that there is any ambiguity as to the meaning of the term "Employer" in the agreement, Fenton resolves that ambiguity by contending in the instant action that Criterion and Morton jointly employed her. Compl. ¶ 17. As such, the First Arbitration Agreement is binding on Fenton with respect to Morton as her employer. In any event, having alleged that Morton and Criterion jointly employed her, and that Morton is sole proprietor of Criterion, Fenton cannot escape the consequences of signing the First Arbitration Agreement, i.e., that her employment claims against Morton must be arbitrated.

Despite the fact that Morton did not sign the First Arbitration Agreement, the Second Circuit has held that non-signatories may invoke equitable estoppel to compel arbitration against signatories when the "issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (quoting *Choctaw Generation Ltd. P'ship*, 271 F.3d at 406) (signatories can be compelled to arbitration by non-signatories where "a careful review of 'the relationship among the parties, the contracts they signed…and the issues that ha[ve] arisen among them discloses that 'the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed'"). Here, Fenton's employment claims are intertwined with the First Arbitration Agreement she signed with her employer. Fenton's claims against Morton are identical to her claims against Criterion. *See Barreto v. Jec II, LLC*, No. 16 Civ. 9729 (KBF), 2017 WL 3172827, at * 6 (S.D.N.Y. July 25, 2017) (finding where the arbitration agreement covered all employment claims and plaintiffs

10

raised the same claims against all defendants, all claims were arbitrable). By Fenton's own account, she, Criterion and Morton are part of the same employment relationship. These facts create the kind of close relationship that requires that her claims against Morton be arbitrated, as the Second Circuit has held in another case with similar circumstances. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010).

In *Ragone*, the Second Circuit found that plaintiff, a make-up artist whose employment with a television production company was subject to an arbitration agreement, was estopped from refusing to arbitrate her sexual harassment claims against ESPN, a cable sports television news service and client of her employer against whom she also brought sexual harassment claims. *See* 595 F.3d at 126-28. The Second Circuit noted that "ESPN is not mentioned in the arbitration agreement" and "therefore [this is] not a case where ESPN is 'linked textually' to [plaintiff's] claims." *Id*. at 127 (internal citations omitted). Nevertheless, the Second Circuit found that "as set forth in [the] complaint, it is plain that when [plaintiff] was hired by [her employer], she understood ESPN to be, to a considerable extent, her co-employer." *Id*. Here, not only did Fenton understand that Morton was her co-employer, she explicitly so alleged that in her complaint. Compl. ¶ 17. ("Defendants jointly employed plaintiff"). Accordingly, Fenton is estopped from refusing to arbitrate her employment claims against Morton, her co-employer.

### *The Second Arbitration Agreement*

Even if Fenton were not required by the First Arbitration Agreement to arbitrate her claims, she is bound to do so by the Second Arbitration Agreement. Both Fenton and Morton signed the Second Arbitration Agreement electronically a few weeks into her employment. The New York Electronic Signatures and Records Act provides that an electronic signature "shall have the same validity and effect as the use of a signature affixed by hand." N.Y. State

11

Technology Law § 304[2]; *see also Naldi v. Grunberg*, 80 A.D.3d 1, 10-11 (N.Y. 1st Dep't 2010).

Fenton alleges that she was unable to read the Second Arbitration Agreement due to the small screen size of her phone. However, "failure to read or understand a contract does not relieve a signer of its obligations thereunder." *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387 (S.D.N.Y. 2017) (internal citations omitted); *see also Brandywine Pavers, LLC v. Bombard*, 108 A.D.3d 1209 (N.Y. 4th Dep't 2013) ("a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents.").

Having signed the Second Arbitration Agreement, Fenton is bound by its terms unless she can show special circumstances, such as fraud, duress or coercion, that would justify the revocation or nonenforcement of a contract. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 328 (S.D.N.Y. 2014) (collecting cases). In the context of evaluating whether "special circumstances" sufficient to warrant relief from an arbitration agreement exist, the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *See id*. (citing *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 91 (2000)).

Fenton alleges multiple acts that she contends, makes the Second Arbitration Agreement unenforceable. These include Fenton's allegations, made in her declaration, that both her supervisor and Morton told her that she needed to sign an authorization form for her identification badge, and that she needed to immediately send it back after signing. However, Fenton does not argue that these allegations satisfy the elements of any specific legal doctrine—such as fraud, duress, coercion—that would justify non-enforcement of the Second Arbitration Agreement. In any event, a review of potentially applicable doctrines reveals that none apply to this case. For example, Fenton has not alleged any threat, unlawfully made or not, by Morton

that left her with no other alternative, as required by a claim of duress. *See Williams v. Parkell Prod., Inc.*, 91 F. App'x 707, 708-09 (2d Cir. 2003). Alternatively, to state a claim for fraud, Fenton must establish that it was reasonable for her to rely on the alleged misrepresentations. New York courts have consistently held that it is not reasonable for a plaintiff to rely on oral representations from defendant that contradict the express terms of the agreement. *See e.g. Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517 (N.Y. 1st Dep't 2012). Although Fenton claims that she did not read the Second Arbitration Agreement, that does not excuse her from her basic responsibility to review the agreement before signing it, as she does not claim that she is illiterate or blind. *In re Toscano*, 799 F.Supp. 2d 230, 245 (E.D.N.Y. 2011) ("failure to read or review an agreement before signing it can serve as a valid basis to void a contract….where the signer is illiterate, or blind, or ignorant of the alien language of the writing…").

### B. *Scope of The Arbitration Agreement*

Given the strong federal policy in favor of arbitration such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, Courts "will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Building Sys., Inc.*, 58 F.3d at 19 (internal quotation omitted). Here, both the First and Second Arbitration Agreements contain broad arbitration clauses that require that "all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of Employee's employment…shall be submitted to binding arbitration" and that includes any claims which "Employee may assert against Employer's employees, officers, directors." Courts that have considered arbitration clauses nearly identical to the ones at issue have concluded that the clause should be interpreted broadly to cover any

13

disputes arising out of the employment relationship. *See Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (collecting cases). Here, all of Fenton's claims arise out of or relate to her employment with Morton. Accordingly, the scope of the arbitration agreements is broad enough to cover each of the causes of action asserted by Fenton. In any event, Fenton does not dispute that her claims fall within the scope of the agreements.

### C. Stay vs. Dismissal

Morton contends that since all the claims are subject to arbitration, they should be dismissed, or alternatively, stayed pending resolution of the arbitration. The Court finds a stay of the instant action more appropriate. Because this case involves issues that are arbitrable pursuant to a written agreement, the FAA requires that the Court stay the proceedings pending arbitration. *See* 9 U.S.C. § 3. The Second Circuit has held that a district court must stay an action—rather than dismiss it—if a party so requests, even if all the claims are sent to arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."); *see also Celltrace Commc'ns Ltd. V. Acacia Research Corp.*, No. 16-2006, 2017 WL 1476600, at *1 (2d Cir. Apr. 25, 2017) ("When all claims are referred to arbitration and a stay as requested here, the Federal Arbitration Act…requires a stay of proceedings.") (internal quotation marks and citations omitted). Accordingly, the Court will stay this action.

## IV. CONCLUSION

For the reasons set forth above, Morton's motion to compel arbitration is GRANTED, and this action is STAYED pending arbitration. The parties are instructed to advise the Court within 48 hours of the outcome of the arbitration. The Clerk of the Court is respectfully directed to stay this action pending arbitration and terminate the motion, Doc. 23.

It is SO ORDERED.

Dated: March 27, 2020
New York, New York

_____
Edgardo Ramos, U.S.D.J.