# Valli Kane & Vagnini

### Attorneys at Law

600 Old Country Road  
St. 519  
Garden City, New York 11530

Tel: 516-203-7180  
Fax: 516-706-0248  
www.vkvlawyers.com

December 3, 2020

**VIA ECF**  
Hon. Edgardo Ramos  
Thurgood Marshall United States Courthouse  
40 Foley Square  
New York, NY 10007

   **Re:** **1:18-cv-10224-ER Fenton v. Criterion Worldwide et al**  
      **Letter Motion Requesting Approval of FLSA Settlement**

Dear Judge Ramos:

  We represent plaintiff in the above-captioned matter and submit this letter, on behalf of all parties, to request approval of the parties' proposed settlement agreement (the "**Settlement**," annexed hereto as Exhibit A) pursuant to the doctrine articulated in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) and its progeny.

**<u>Background</u>**

  In this action, plaintiff Siobhan Fenton ("**Plaintiff**") filed a complaint (the "**Complaint**," ECF Dkt. No. 1) against defendants Lewis Morton and Criterion Worldwide[1] asserting five (5) causes of action for alleged wage and hour violations: (1) failure to pay overtime required pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "**FLSA**") ; (2) failure to pay minimum wages required pursuant to the FLSA; (3) failure to pay overtime required pursuant to the New York Labor Law ("**NYLL**"); (4) failure to pay minimum wages required pursuant to the NYLL; and (5) failure to provide wage notices and wage statements pursuant to the violation of the New York Labor Law § 195 (the Wage Theft Prevention Act, or "**WTPA**").

  Plaintiff styled her federal claims on behalf of a two purported "collectives" under the FLSA, comprised of: persons who are and were employed by Defendants as Account Executives

---

[1] Subsequent to the filing of the Complaint, Defendant Morton represented to the Court (ECF Dkt. No. 15) that Global Outsourcing, Inc. had been incorrectly sued under the Criterion Worldwide name.  Indeed, Plaintiff has been unable to locate any entity formally incorporated under the name Criterion Worldwide.  Criterion was dismissed from the action by a Court Order dated March 27, 2020 (ECF Dkt. No. 26, at 9).

Hon. Judge Ramos
P a g e | 2

during the past three (3) years through the final date of the disposition of this action who: (i) are/were not paid the statutorily required overtime rate of one-and-a-half (1 1/2 ) times their regular hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA; and (ii) are/were not paid the statutorily required federal minimum wage for all hours worked per workweek in violation of the FLSA.

Plaintiff styled her state law claims, pursuant to Fed. R. Civ. 23, on behalf of three (3) classes of persons who are and were employed by defendants as Account Executives during the past six (6) years through the final date of disposition of this action who: (i) are/were not paid the statutorily required overtime rate of one-and-a-half (1 ½) times their regular hourly rate for all hours worked in excess of forty (40) hours per workweek in violation of the NYLL; (ii) are/were not paid the statutorily required minimum rate for all hours worked in a workweek in violation of the NYLL; and (iii) are/were not provided the proper wage statements and notices as required by NYLL § 195.

Plaintiff alleged that she, and similarly situated Account Executives, were employed throughout New York City, by defendants, to work on their marketing campaigns. Plaintiff alleged that the Account Executives' primary job duties included standing on street corners in front of frequented buildings, such as hospitals, to market the products and services of defendants' clients including, for example, to solicit low-income customers to enroll into Assurance Wireless's government-subsidized cellphone plan pursuant to the "Lifeline Assistance Program." *See* Complaint, ¶22. Plaintiff also alleged that the Account Executives were compensated solely on a commission basis (at a rate of $10.00 per customer enrolled into a cellphone plan), were not paid on an hourly, fee, or salary basis, and were (when they elected to receive their wages via direct deposit) not issued paystubs. *Id*. at ¶¶ 23-26. Plaintiff alleged that the Account Executives typically enrolled between twenty (20) to thirty (30) persons per workweek, were required to work six (6) days per workweek, and were required to work approximately eight (8) to twelve (12) hours per workday, without set schedules, and were told when and where to report by their supervisors, one day in advance. *Id*. at ¶¶ 28-33.

On May 9, 2019, defendants filed a motion to compel plaintiff to arbitrate her claims. ECF Dk.t No. 21. Plaintiff opposed the motion (ECF Dkt No. 24), and Defendant submitted a reply in response (ECF Dkt. No. 25). After the motion was fully briefed, the Court granted the motion via an Opinion and Order (ECF Dkt. No. 26) which stayed this action pending arbitration. In granting the motion, the Court enforced an arbitration agreement that precluded Plaintiff from asserting claims on behalf of any putative collective or class.

Plaintiff calculated her total individual damages as **$27,235.84**, as follows:

**Overtime**:

Plaintiff's calculation of damages was based upon her allegations that she worked 72 hours per week, with 32 hours of overtime per week, for twelve (12) weeks, that her weekly pay was $250 per week, with an effective hourly rate of $3.47, and an overtime hourly rate of $3.63 per hour. As a result, Plaintiff calculated that her FLSA overtime damages were $1,393.92 and her NYLL Overtime damages were $2,112.

Hon. Judge Ramos
P a g e | **3**

| Overtime | Hours Worked Per Week | Overtime Hours Per Week | Weeks Worked | Total Overtime Hours | Weekly Pay | Effective Hourly Rate | Overtime Hourly Rate | Alleged Damages |
|---|---|---|---|---|---|---|---|---|
| FLSA | 72 | 32 | 12 | 1792 | $250 | $3.47 | $3.63 | **$1,393.92** |
| NYLL | 72 | 32 | 12 | 1792 | $250 | $3.47 | $5.50 | **$2,112.00** |

### Minimum Wage:

Plaintiff made similar calculations to determine her alleged damages for failure to pay the minimum wages required under the FLSA and NYLL, as follows:

| Minimum Wage | Hours Worked Per Week | Weeks Worked | Total Hours Worked | Weekly Pay | Effective Hourly Rate | Minimum Wage Difference | Alleged Damages |
|---|---|---|---|---|---|---|---|
| FLSA | 72 | 12 | 4032 | $250 | $3.47 | $3.78 | **$3,265.92** |
| NYLL | 72 | 12 | 4032 | $250 | $3.47 | $7.53 | **$6,505.92** |

### Wage Theft Prevention Act:

Plaintiff calculated that she was entitled to the maximum statutory penalties for wage statements ($5,000.00) and wage notices ($5,000.00) under NYLL WTPA, which are set forth in NYLL § 198(1)(b) and §198(1)d.

### Plaintiff's Maximum Provable Damages on Federal and State Claims:

Plaintiff thus calculated that her maximum provable damages under the FLSA were **$4,659.84** (the sum of $1,393.92 for overtime and $3,265.92 for minimum wage) and that her maximum provable damages under the NYLL were **$27,235.84** (backpay of $8,617.92, comprised of $2,112.00 in overtime and $6,505.92 in minimum wage, plus liquidated damages of another $8,617.92, plus $10,000.00 for WTPA penalties).

### The Parties' *Bona Fide* Dispute

**Defendants deny and dispute all of Plaintiffs' claims**. In addition to disputing the factual allegations of the Complaint, defendants' position was that Plaintiff signed an employment agreement indicating that she was an at-will exempt outside sales employee paid on a commission basis, and was thus properly classified as "exempt" from minimum wage and overtime under federal and state law. Additionally, subsequent to the filing of the Complaint, the Second Circuit affirmed a decision in a SDNY case styled *Vasto v. Credico*, in which Judge Englemayer dismissed a complaint finding that plaintiffs who worked on the Assurance Wireless campaign for one of Defendants' competitors named Cromex, were exempt under the FLSA and NYLL based on the outside sales exemption. Defendants assert that because the Plaintiff here worked on the Assurance Wireless campaign, and spent the majority of her time in the field, that she too is exempt

Hon. Judge Ramos
P a g e | **4**

from the requirements of the FLSA and NYLL. Accordingly, whether Plaintiff's factual allegations here can be distinguished from those in *Vasto* is the subject of a *bona fide* dispute between the parties concerning whether defendants have any potential liability in connection with plaintiffs' FLSA and NYLL claims.

### The Proposed Settlement is Fair and Reasonable

Though Plaintiff claims approximately $**27,235.84** in damages should she prevail on all of her claims at trial, Plaintiff recognizes the risks of continuing to litigate this matter and proceed through trial in light of the *bona fide* disputes between the parties, identified above. As a result, the parties have agreed to settle this matter for the total sum of **$7,500.00**, inclusive of attorneys' fees and expenses. All parties were represented by experienced counsel.

Plaintiff will receive $3,531.92 after attorneys' fees ($2,354.62) and expenses ($1,613.46) have been deducted from the settlement amount. Plaintiff's counsel respectfully requests $1,613.46 for identifiable expenses, which include: the Southern District of New York filing fee ($400.00), the costs of serving the defendants through their process server ($350.15), Legal Research ($813.21), copying ($42.75) and postage ($7.35).

Plaintiff's counsel respectfully requests forty (40% percent of the settlement after expenses, or $2,354.00, as agreed upon in Plaintiff's retainer agreement with the firm, which are substantially less than the value of the time expended on this matter by Plaintiff's counsel's attorneys and professional staff, including in investigating the case, drafting the pleading, and engaging in motion practice in this matter. Attorneys' fees here are thus very modest and are comparable to those routinely approved in this jurisdiction. *See Flores v. Anjost Corp.,* 2014 WL 321831, at *9 (S.D.N.Y. Jan 29, 2014) ("Applying the lodestar method as a 'cross check,' the Court finds tha the fee that Class Counsel seeks is reasonable and does not represent an exorbitant multiplier – indeed, there is no multiplier) (citations omitted); *see also Fisher v. SD Prot. Inc.,* 2020 WL 550470, *7 (2d Cir. Feb. 4, 2020) (holding that "[t]here is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and in practice, implement such a limit" and noting that limiting fees to 33.33% is problematic, particularly when plaintiffs are low income earners). This settlement is also on an individual basis and not a collective/class-wide basis, which results in the 40% fee being significantly lower in monetary value. Accordingly, Plaintiffs' counsel's fee of 40% of the total settlement is fair and reasonable and they should not be limited to a lesser percentage.

Furthermore, the Agreement does not include any confidentiality provisions nor does it provide for Plaintiff to release any claims unrelated to those asserted in this matter.

In closing, the parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore request that the Court approve or so order the Settlement Agreement. Should the Court determine that the proposed agreement is fair and reasonable, the Parties will file a Stipulation of Dismissal with Prejudice along with a request that it be So-Ordered.

Thank you for your time and attention to this matter.

Hon. Judge Ramos
P a g e | **5**

                                                        Respectfully submitted,

                                                        VALLI KANE & VAGNINI LLP

                                                        */s/ Matthew L. Berman*
                                                        Matthew L. Berman

                                                        *Attorneys for Plaintiff*

cc: